UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EXODUS REFUGEE IMMIGRATION, INC.; | ) | |
| JOHN DOE, JANE DOE, CHILD DOE 1, | ) | |
| CHILD DOE 2, CHILD DOE 3, CHILD DOE | ) | |
| 4, CHILD DOE 5, CHILD DOE 6, | ) | |
| by their parents and next friends, JOHN DOE | ) | |
| and JANE DOE, on  their own behalf | ) | |
| and on behalf of a class of those similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-2449 |
| | ) | |
| SECRETARY, INDIANA FAMILY AND | ) | |
| SOCIAL SERVICES  ADMINISTRATION, | ) | |
| in his official capacity; | ) | |
| DIRECTOR, INDIANA DIVISION OF | ) | |
| FAMILY RESOURCES, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**Complaint for Declaratory and Injunctive Relief-Class Action**

**Introduction**

1.     In 1996, through the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Congress established that noncitizens who were admitted to the United States as refugees or who were in the United States and granted asylum could immediately receive what is now known as the Supplemental Nutrition Assistance Program ("SNAP") benefits, formerly known as food stamps, without any waiting period. Subsequent statutory changes provide that Afghan nationals who

[1]

assisted the United States during the war in that country could receive special immigrant visas or SIVs, and were to be treated the same as refugees for purposes of SNAP eligibility. Refugees may apply for and receive lawful permanent resident status, also known as a "green card," after being in the United States for one year. Noncitizens approved as asylees may apply and receive lawful permanent resident status one year after the approval. SIVs may receive lawful permanent resident status as soon as they are granted the visa. While other lawful permanent residents only become eligible for SNAP assistance after they are in the United States for five years or have been credited with 40-qualifying-quarters of work, this limitation does not apply to lawful permanent residents who are refugees, asylees, or special immigrant visa holders. Rather, the PRWORA exempted them from these restrictions on SNAP eligibility and the statutory exemptions remain in effect.

2.      The recently enacted H.R. 1 (eff. July 4, 2025), designated as the "One Big Beautiful Bill Act," limits SNAP benefits to noncitizens who are lawful permanent residents. Aside from requiring all noncitizens to be lawful permanent residents to receive benefits, however, it does not alter the PRWORA's designation of refugees and those with asylum or SIV status as eligible for SNAP assistance without meeting the five-year-residence or 40-qualifying-quarters-of-work requirements imposed on other noncitizens with lawful permanent resident status.

3.      Nevertheless, defendants have determined that the five-year or 40-qualifying-

quarters-of-work requirements apply as a precondition for all lawful permanent residents applying for SNAP benefits. As a result, defendants are terminating lawful permanent residents from SNAP, or denying them benefits, because they do not meet these requirements, even though they are refugees, approved asylees, and those with SIV status, to whom these requirements do not apply.

4.     The actions of the defendants are unlawful and unconstitutional, causing irreparable harm not only to those who have been receiving SNAP benefits or who would be eligible for them, but also to Exodus Refugee Immigration, Inc. ("Exodus"), a social services agency aiding noncitizens that has had to divert resources from its other programs and activities and has had to assume new burdens to try to provide food assistance to its clients who should be receiving SNAP benefits. The plaintiffs are entitled to appropriate injunctive and declaratory relief. The relief should also be extended to a class of persons similarly situated.

**Jurisdiction, venue, cause of action**

5.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7.     Declaratory relief is authorized by Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202.

8.     Plaintiffs bring this case pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution. Additionally, defendants' actions are preempted by the Supremacy Clause.

**Parties**

9.      Exodus Refugee Immigration, Inc. is an Indiana not-for-profit corporation.

10.     John Doe, a pseudonym, is a noncitizen who resides in Indiana.

11.     Jane Doe is a noncitizen who resides in Indiana.

12.     Child Doe 1, Child Doe 2, Child Doe 3, Child Doe 4, Child Doe 5, and Child Doe 6 are the anonymous names of the children of John and Jane Doe who represent them in this action as their parents and next friends.

13.     The Secretary of the Indiana Family and Social Services Administration is the duly appointed head of the Indiana agency that oversees, among other subagencies, the Division of Family Resources.

14.     The Director of the Indiana Division of Family Resources is the duly appointed head of the division within the Indiana Family and Social Services Administration that, among other things, receives applications and approves eligibility for SNAP.

**Class action allegations**

15.     Plaintiffs John Doe, Jane Doe, Child Doe 1, Child Doe 2, Child Doe 3, Child Doe 4, Child Doe 5, and Child Doe 6 bring this action on their own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

16.     The proposed class is defined as:

        all persons in Indiana who are lawful permanent residents admitted to the
        United States within the past seven years as refugees pursuant to section

[4]

207 of the Immigration and Nationality Act, approved asylees pursuant to section 208 of the Immigration and Nationality Act, or Special Immigrant Visa holders, and who have been denied or terminated from, or who will be denied or terminated from, the Supplemental Nutrition Assistance Program because of not being in the United States for five years or not satisfying the 40-qualifying-quarters-of-work requirement.

17.    As defined, the class is so numerous the joinder of all members is impracticable.

18.    There are questions of law or fact common to the class—whether the defendants are violating the Constitution and federal law by denying and terminating the class members' SNAP benefits because of failure to meet the five-year or 40-qualifying-quarters-of-work requirements.

19.    The claims of the individual plaintiffs are typical of those of the class.

20.    The individual plaintiffs will fairly and adequately protect the interests of the class.

21.    The further requirements of Rule 23(b)(2) are met because at all times defendants have acted and have refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

22.    Undersigned counsel are appropriate to appoint as attorneys for the class pursuant to Rule 23(g).

**Legal and factual background**

*Legal background*

23.    Section 207 of the Immigration and Nationality Act, 8 U.S.C. § 1157, allows for the

admission of refugees into the United States with the number to be set by the President, in consultation with Congress, based on humanitarian concerns or the national interest. 8 U.S.C. § 1157(a)(2), (d), (e). This may include additional numbers set by the President based on emergencies and special humanitarian concerns. 8 U.S.C. § 1157(b), (d), (e).

24.    Section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, allows a noncitizen to apply for asylum if they are in the United States and they have suffered persecution or fear that they will suffer persecution because of their race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(A); 8 U.S.C § 1101(a)(42)(A).

25.    A refugee or approved asylee may be granted lawful permanent resident status, popularly known as a green card, one year after attaining the status of refugee or asylee. Refugees receive that status upon entry to the United States. Asylees receive that status when it is granted to them by United States Citizenship and Immigration Services or the United States Department of Justice.

26.    In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), 8 U.S.C. § 1601, *et seq.*, which was signed into law by President Clinton.

27.    Among other things, the PRWORA restricted some public benefits to certain non-naturalized residents, referred to as "aliens."

28.    This was based on an articulated policy that the noncitizens should not be

incentivized to come to the United States because of the potential availability of public benefits and that they should not depend on public benefits to meet their needs. 8 U.S.C. § 1601(2).

29.    "To accomplish these objectives, the [PRWORA] set out a comprehensive set of eligibility governing aliens' access to both federal and state benefits," with the federal benefits "strictly circumscribed by designated categories." *Korab v. Fink*, 797 F.3d 572, 580 (9th Cir. 2014).

30.    One of the federal benefits referred to in the PRWORA was the food stamp program, now known as the Supplemental Nutrition Assistance Program, or SNAP.

31.    SNAP was established in the Food Stamp Act of 1964 (PL 88-525) and is the United States' largest anti-hunger program, helping 41.7 million participants per month. USDA-Economic Research Services, *Supplemental Nutrition Assistance Program (SNAP) – Key Statistics and Research,* Updates 7/24/25, https://www.ers.usda.gov/topics/food-nutrition-assistance/supplemental-nutrition-assistance-program-snap/key-statistics-and-research (last visited Nov. 16, 2025).

32.    Low-income individuals and families who are eligible for SNAP benefits will receive food assistance through an electronic benefits transfer card with the amounts determined by eligibility standards.

33.    Section 402 of the PRWORA, codified at 8 U.S.C. § 1612(a), sets out a general rule that "qualified alien[s]"—defined in section 431 (8 U.S.C. § 1641(b)(1)-(3)), to include

lawful permanent residents, noncitizens granted asylum, and those admitted as refugees—are not eligible for any "specified Federal program," which includes food stamps, now SNAP. (The term "SNAP" will be used below rather than the 1996 parlance of "food stamps" when the PRWORA sections remain identical today.).

34.    However, the law contains exceptions for lawful permanent residents to become eligible for SNAP assistance, provided they meet certain requirements.

35.    Section 402 of the PRWORA, 8 U.S.C. § 1612(a)(2)(L), provides that "qualified aliens" may receive SNAP assistance if they have resided in the United States for more than five years.

36.    Section 402 of the PRWORA, 8 U.S.C. § 1612(a)(2)(B), provides an alternative method to the five-year requirement and states that lawful permanent residents may be eligible for benefits if they have worked 40-qualifying quarters as defined by Title II of the Social Security Act. Although 40 calendar quarters may appear to be longer than five years, Section 435 of the PRWORA, 8 U.S.C. § 1645, provides that the quarters can be earned not only by the work of the noncitizen, but also by combining quarters earned by their spouse or parents while the noncitizen was under 18.

37.    However, section 402 of the PRWORA acknowledges the special status of persons admitted as refugees or those granted asylum under 8 U.S.C. § 1157 or 8 U.S.C. § 1158, originally stating that the general exclusion from food stamps for qualified aliens did not apply to a noncitizen for five years after the date they were admitted as refugees under

section 207 of the Immigration and Nationality Act (8 U.S.C. § 1157), or granted asylum under section 208 of the Act (8 U.S.C. § 1158).

38.     As relevant to refugees and those granted asylum, section 402 of the PRWORA has been codified in identical form at 8 U.S.C. §1612(a)(2)(A)(i), (ii), except that the period before the general exclusion for eligibility for SNAP benefits takes effect has been lengthened from five years to seven years.

39.     For purposes of temporal limitations on the eligibility for SNAP benefits, noncitizens continue to be recognized as refugees or as noncitizens granted asylum even after they become a lawful permanent residents. *See, e.g.*, 8 U.S.C. § 1641(b) (containing separate definitions for "qualified aliens" who are lawful permanent residents, those granted asylum under Section 208 of the Immigration and Nationality Act, and those admitted as refugees under Section 207 of the Immigration and Nationality Act).

40.     After the enactment of the PRWORA, Congress created a special immigrant visa status, or SIV status, for Afghan nationals and their families where the nationals were employed in their home country by or on behalf of the United States armed forces or their contractors.

41.     Section 8120 of the Department of Defense Appropriations Act of 2010, P.L. 111-118 (uncodified), amended prior legislation to provide that Afghan SIV holders and their families are eligible for federal public benefits, including SNAP benefits, to the same extent and for the same period as refugees admitted under Section 207 of the Immigration

and Nationality Act. That is, they are treated the same for eligibility purposes as refugees designated by Section 207. However, SIV holders will immediately receive lawful permanent residence status without any waiting period.

42.    H.R. 1, signed into law on July 4, 2025, also known as the "One Big Beautiful Bill Act," is a budget bill that contains provisions concerning, among other things, the SNAP program.

43.    Section 10108 of H.R. 1, codified at 7 U.S.C. § 2015(f), provides, in part:

> (f) No individual who is a member of a household otherwise eligible to participate in the supplemental nutrition assistance program under this section shall be eligible to participate in the supplemental nutrition assistance program as a member of that or any other household unless he or she is—
>
> > (1) a resident of the United States; and
> >
> > (2) either—
> >
> > > (A) a citizen or national of the United States;
> > >
> > > (B) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 101(a)(15) and 101(a)(20) of the Immigration and Nationality Act, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;
> > >
> > > (C) an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96–422); or
> > >
> > > (D) an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 402(b)(2)(G) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.

44.     Although H.R. 1 restricts SNAP benefits to lawful permanent residents, it does not alter the existing statute, 8 U.S.C. § 1612(a)(2)(A), which provides that neither those granted asylum nor refugees (including SIV holders) are subject to the five-year limitation generally imposed on lawful permanent residents before they can receive SNAP. Nor does it change the fact that they are not required to avail themselves of the 40-qualifying-quarters exception to be eligible for SNAP benefits.

*Facts*

GENERAL FACTS

45.     Defendants direct and control the SNAP program in Indiana.

46.     Despite 8 U.S.C. § 1612, the defendants have determined that, with the enactment of H.R. 1, no lawful permanent residents are eligible for SNAP benefits unless they have been in the United States for more than five years or they satisfy the 40-qualifying-quarters-of-work requirement. This includes lawful permanent residents who are refugees, or who have been granted asylum or SIV status, to whom these requirements simply do not apply under the PRWORA. As a result, defendants are terminating the SNAP benefits of lawful permanent residents who were admitted to the United States as refugees, approved asylees, or SIV holders, and defendants are denying these persons SNAP eligibility unless they meet the 40-qualifying-quarters-of-work requirement or the five-year waiting period requirement imposed on lawful permanent residents who have not been granted refugee, asylee, or SIV status.

EXODUS REFUGEE IMMIGRATION, INC.

47.     Exodus is a non-profit social services agency, in operation since 1981, that exists to aid and support humanitarian immigrants. This includes refugees and persons with approved asylum and SIV status.

48.     Since it began its operation, Exodus has assisted thousands of persons from more than 50 countries.

49.     Exodus is a refugee resettlement agency that receives resettlement funds to assist refugees through the Office of Refugee Resettlement that is located within the U.S. Department of Health and Human Services. The funds are paid to Church World Service, a national organization, which passes funds to Exodus. Exodus has also received Office of Refugee Resettlement funding via the State of Indiana, through the Indiana Family and Social Services Administration, to assist its clients with certain services. It is also a recipient of private grants and donations.

50.     Exodus provides a full range of services designed to assist its clients Among other things it provides reception and placement services for those who are newly arrived. It also provides employment services like job readiness and job placement help, language training and cultural orientation services, mental health services, a program designed to meet the unique needs of female noncitizens, youth mentoring programs, intensive case management services, and immigration legal services through lawyers employed by Exodus.

51.     Additionally, Exodus provides funds directly to its clients who struggle to pay essential expenses to support their families, such as rent, utilities, food, clothing, transportation, and medical expenses. Exodus only has limited funds and resources to provide this direct assistance.

52.     While Exodus's clients are getting used to their new lives in Indiana, they rely on Exodus to support them and, in many cases, to assist them with their basic needs.

53.     Exodus's funds are limited and it will assist its clients to apply for and receive government benefits as soon as they are eligible for the benefits. These benefits include assistance from Temporary Assistance for Needy Families or Refugee Cash Assistance, Medicaid, and SNAP.

54.     Exodus does not have the ability to provide for all the essential needs of its clients.

55.     Exodus is obligated by the Federal Assistance Award that was awarded to Church World Service by the U.S. Department of State, and that was passed through to Exodus, to assist refugees with their applications for cash assistance, as appropriate; their applications for health insurance/medical assistance, as appropriate; and their applications for SNAP benefits, if necessary.

56.     Many of Exodus's clients who are refugees or noncitizens with approved asylee or SIV status have, because of their limited income and resources, been eligible for SNAP benefits and have applied for and received them.

57.     These benefits are essential for Exodus's clients who are eligible, allowing those

clients and their families to obtain food and at the same time to reserve their other resources to provide for their other needs as they try to build new lives in the United States.

58.     Exodus estimates that at the current time it is serving approximately 723 active clients who are refugees, approved asylees, or SIV holders and who have lawful permanent resident status.

59.     Exodus estimates that it has more than 40 of these clients who are lawful permanent residents, including adults and their children, who have been receiving SNAP benefits as refugees, approved asylees, and holder of SIVs, and who have been notified that they are not eligible for SNAP because they have not been in the United States for more than five years and do not satisfy the 40-qualifying-quarters of-work requirement imposed on lawful permanent residents who are not refugees, approves asylees, or SIV holders.

60.     None of these persons have been in the United States or have had approved asylee status for more than five years or meet the required 40-quarters of work.

61.     Exodus expects this number to grow as more termination notices are sent out.

62.     Exodus first learned in early November that clients who are lawful permanent residents who are refugees, approved asylees, or holders of SIVs were having their SNAP benefits terminated because they did not meet the State of Indiana's new requirements that they have 40 qualifying-quarters of work or five years of presence in the United

States.

63.     Exodus was able to ascertain that the reason for these terminations and denials of assistance was because the defendants have erroneously interpreted H.R. 1 (the "One Big Beautiful Bill Act") as reversing the PRWORA provisions that allow refugees, SIV holders, and approved asylees to receive SNAP benefits without meeting the 5-year-residency or 40-qualifying-quarters-of-work requirements.

64.     All that H.R. 1 has done is require that a refugee (including a person with SIV status) and a person approved as an asylee be a lawful permanent resident to receive SNAP benefits. 7 U.S.C. § 2015(f)(2)(B).

65.     Exodus recognized that the denial of SNAP benefits would be catastrophic to its clients who depend on these benefits.

66.     Exodus does not have the funds or resources to provide its clients with assistance equivalent to the amount of SNAP benefits being removed from the clients.

67.     After learning of the widespread termination and denial of SNAP benefits, Exodus immediately took steps to assist with the food needs of its clients who formerly received SNAP benefits.

68.     This required Exodus to divert its resources from its other programs and activities and this diversion continues at the present time.

69.     Among other things Exodus is spending significant time and resources coordinating plans to collect food such as rice, beans, and flour for clients; engaging in

[15]

donor and volunteer call-outs to solicit food donations and warehouse support to package food for clients; using limited funds to purchase grocery store gift cards to replace lost SNAP funds for clients; pulling several staff members from their normal duties several days per week to conduct food resource giveaways (such as "Food Fridays" where clients who have lost SNAP can come in to do a basic intake and walk out with both food and grocery store gift cards).

70.     Significant time has been spent, and will continue to be spent, by several staff members to intake, sort, store, and distribute food items to clients, which is not part of their normal job descriptions and duties.

71.     These staff members have been pulled away from other duties such as case management, reception, program management, and housing assistance roles to work on food insecurity issues because the urgency of the clients' needs due to the loss of SNAP has necessitated these extraordinary and non-routine efforts.

72.     These efforts are not routine, exceed ordinary program costs and efforts, and represent new burdens occasioned solely by defendants' actions.

73.     This diversion of effort, funds, and attention is interfering with the ability of Exodus to fulfill other aspects of its mission.

74.     While Exodus would have undertaken these efforts to a much more limited extent if defendants had interpreted federal law properly and only terminated refugees (including those with SIV status) and those granted asylum who did not yet have lawful

permanent residence status, the fact that defendants have misinterpreted the law and have terminated or denied benefits to all refugees and asylees, unless they meet the 5-year residency or 40-qualifying-quarters-of-work requirements has greatly increased the number of clients who are being injured and has greatly increased Exodus's necessary and completely unexpected efforts.

75.     These efforts will increase still more as more clients are improperly denied or terminated from SNAP benefits. This includes clients who will receive lawful permanent status, but will still not be able to receive SNAP benefits.

76.     Defendants' actions directly interfere with Exodus's core activities and have created new burdens on Exodus that differ from its routine activities and that are continuing as Exodus works to provide for its clients who are now without SNAP benefits.

PLAINTIFFS JOHN DOE, JANE DOE AND CHILDREN DOES 1-6.

77.     John Doe is a noncitizen who is from Afghanistan.

78.     He and his family, consisting of his wife Jane Doe, also from Afghanistan, and his children Child Doe 1, Child Doe 2, Child Doe 3, Child Doe 4, Child Doe 5, and Child Doe 6, who are all from Afghanistan, are lawfully present in the United States because John Doe was given a special immigrant visa after providing assistance to the United States in Afghanistan. The SIV provides him and his family with lawful status.

79.     John Doe came to the United States in October of 2024, and he, his wife, and

children all have lawful permanent resident status.

80.    He and his family receive assistance from Exodus.

81.    Mr. Doe has recently started working and earning $17 an hour for approximately 40-hours of work each week. No one else in the family is employed.

82.    The family previously received monthly TANF cash benefits of $1,033 and monthly SNAP benefits of $1,553. However, benefits were terminated when Mr. Doe began to work.

83.    Mr. Doe meets the resource and income requirements for SNAP benefits and applied for them on October 27, 2025.

84.    Neither John Doe nor Jane Doe have been in the United States for more than five years and they do not have 40-qualifying quarters of work.

85.    Because defendants are refusing to recognize that lawful permanent residents who are present in the United States as refugees (including those who have SIVs) and asylees are eligible for benefits without any waiting period and without meeting the 5-year-residency or the 40-qualifying quarters requirements, John Doe was notified by the Family and Social Services Administration on November, 2025 that the family's SNAP application was denied because:

> Individual who is an alien lawfully admitted for permanent residence does not have 40 qualifying quarters to be eligible

86.    The family's rent is $1,275 a month, not including utilities. They have minimal resources.

87. Without SNAP benefits, and with few funds available to them, the family is unable to purchase an adequate amount of food and is depending on Exodus to help them with food assistance, although they are not receiving as much food assistance from Exodus as they did from SNAP.

CONCLUDING ALLEGATIONS

88. Defendants have no valid interest, let alone a compelling one, justifying their discrimination against refugees and those approved for asylee or SIV status.

89. Exodus, John Doe, Jane Doe, Child Doe 1, Child Doe 2, Child Doe 3, Child Doe 4, Child Doe 5, and Child Doe 6 and the putative class are being caused irreparable harm for which there is no adequate remedy at law.

90. At all times defendants have acted and have failed to act under color of state law.

**Legal claims**

91. The defendants' classification, for purposes of SNAP eligibility, of noncitizens in a different manner than the manner established by the federal government is preempted by the federal government's exclusive right to regulate immigration and by federal law and is also preempted because the federal government has preempted the field concerning SNAP eligibility.

92. Congress, through passage of the PRWORA, specifically 8 U.S.C. § 1612(a)(2)(A)(i), (ii); Section 8120 of the Department of Defense Appropriations Act of 2010, and 7 U.S.C. § 2015(f)(2)(B)(2), has explicitly established the eligibility for SNAP benefits for lawful

permanent residents who are refugees, persons granted asylum, and Special Immigrant Visa holders and therefore has preempted the defendants' attempt to impose conflicting eligibility requirements and these attempts are invalid.

93.     Congress has determined that at least during the first seven years that they are in the United States, lawful permanent residents who are refugees and approved asylees under sections 207 or 208 of the Immigration and Nationality Act (8 U.S.C. §§ 1157, 1158) and Special Immigrant Visa holders are to be treated the same as American citizens for purposes of SNAP eligibility. The defendants' failure to do so represents a classification based on alienage that violates Equal Protection.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

1.     accept jurisdiction of this case and set if for hearing at the earliest opportunity;

2.     certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) with John Doe, Jane Doe, Child Doe 1, Child Doe 2, Child Doe 3, Child Doe 4, Child Doe 5, and Child Doe 6 as class representatives and with undersigned counsel appointed as attorneys for the class pursuant to Rule 23(g);

3.     enter a declaratory judgment that defendants' challenged policy violates the Constitution and that their actions are preempted as noted above;

4.     enter a preliminary injunction, later to be made permanent, requiring defendants to immediately process the SNAP application of John Doe, Jane Doe and their children and the SNAP applications of all class members as defendants did prior to the recent unlawful policy change and to restore benefits to all class members who were unlawfully denied benefits because of the recent policy change and to cease applying the policy;

[20]

5.    award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

6.    award all other proper relief.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
Joshua T. Bleisch
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org
jbleisch@aclu-in.org

Attorneys for Plaintiff